IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHAD HILL, on behalf of himself and  )
others similarly situated,            )
                                      )
              Plaintiffs,             )
                                      )
v.                                    )   Civil Action No. 3:22-cv-97-HEH
                                      )
PEPPERIDGE FARM, INC.,                )
                                      )
              Defendant.              )

**MEMORANDUM OPINION**
**(Denying Defendant's Motion to Dismiss and Strike Class Allegations)**

THIS MATTER is before the Court on Defendant Pepperidge Farm, Inc.'s ("Defendant" or "Pepperidge Farm") Motion to Dismiss Amended Complaint and to Strike Class Allegations (the "Motion"), filed on June 23, 2022. (ECF No. 23.) Defendant previously filed a Motion to Dismiss and Strike Class Allegations as to the original Complaint on April 18, 2022. (ECF No. 5.) At a hearing before the Court on that original Motion to Dismiss, the Court gave Plaintiff Chad Hill ("Plaintiff") leave to file an Amended Complaint. Plaintiff filed an Amended Complaint on June 9, 2022 and the Court denied Defendant's original Motion to Dismiss as moot. Defendant then filed the instant Motion. For the reasons stated herein, the Court will deny the Motion.

Pepperidge Farm is a corporation that manufactures and distributes packaged food for retail sale. (Am. Compl. ¶ 15, ECF No. 20.) Plaintiff is a distributor or "Consignee" of Defendant who distributes the packaged food to the retail stores. (*Id.* ¶ 16.) Consignees purchase their right to deliver and distribute Defendant's products within a

specified territory and enter into a Consignment Agreement with Defendant. (*Id.* ¶¶ 17, 19.) In the Consignment Agreement, Consignees are referred to as "independent businessmen" with "independent contractor relationship[s]" with Defendant. (*Id.* ¶ 18.)

Plaintiff alleges that, despite Consignees being classified as independent contractors, Defendant maintains all "meaningful and actual control over the product and territory." (*Id.* ¶ 19.) This level of control, Plaintiff asserts, means that Consignees are actually employees as that term is defined under the Fair Labor Standards Act (the "FLSA"). (*Id.* ¶¶ 22–23.) Accordingly, Plaintiff brings four Counts based on the Consignees' alleged misclassification as independent contractors: Violation of the FLSA—Failure to Pay Overtime Compensation (Count I); Violation of Virginia Code § 40.1-28.7:7—State Law Misclassification Class Action (Count II); Violation of Virginia Code § 40.1-29.2—Virginia Overtime Wage Act ("VOWA") Class Action (Count III); and Violation of Virginia Code § 40.1-29—Unpaid Wage Class Action (Count IV). Plaintiff brings his FLSA claim (Count I) as a collective action and seeks to bring his remaining state law claims as class actions.

## I. STANDARD OF REVIEW

Defendant's Motion is premised on Federal Rules of Civil Procedure 12(b)(6) and 12(f)(2). (Mot. at 1, ECF No. 23.) A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226

2

(4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

While a motion to dismiss tests the sufficiency of a complaint, courts may consider documents that are either "explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, . . . the exhibit prevails." *Id.* (alteration in original) (quoting *Fayetteville Invs. v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

As for Rule 12(f)(2), "the Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on motion of a party. Rule 12(f) motions to strike "are viewed with disfavor and are granted only for egregious violations." *Brown v. Inst. for Fam. Centered Servs., Inc.*, 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005). The movant must show "that the matter is both 'prejudicial' and of the type 'envisioned' by Rule 12(f)." *Hicks v. Alarm.com, Inc.*, No. 1:20cv532, 2020 WL 9261758, at *3 (E.D. Va. Aug. 6, 2020) (quoting *Billips v. NC Benco Steel, Inc.*, No. 5:10cv95, 2011 WL 4829401, at *1 (W.D.N.C. Oct. 12, 2011)).

## II. DISCUSSION

Defendant's Motion rests on three main points. First, Defendant asserts that Plaintiff's Complaint is legally and factually deficient and fails to sufficiently plead threshold requirements of an employment relationship between Plaintiff and Defendant. (Def.'s Mem. Supp. at 11, ECF No. 24.) Defendant claims that Plaintiff mostly includes conclusory allegations with no factual support. (*Id.*) Second, Defendant states that, even if the Court found Plaintiff had alleged sufficient facts to show he was an employee, he has not alleged plausible overtime claims. (*Id.* at 24.) Finally, Defendant alleges that Plaintiff improperly asserts class action claims because the applicable Virginia statutory provisions can "only be asserted under the collective action procedure of the FLSA." (*Id.* at 11.) Thus, Defendant seeks to strike the class allegations in Counts III and IV.

Defendant alleges that Plaintiff has not pled an employer-employee relationship with Pepperidge Farm and Plaintiff fails to demonstrate that he is not an independent contractor as described in the Consignment Agreement. Defendant can only be liable

4

under the FLSA, VOWA, and VA Code § 40.1-29 if there was an employer-employee relationship between Pepperidge Farm and Plaintiff as defined by the FLSA. *See Chao v. Mid-Atl. Installation Servs., Inc.*, 16 Fed. App'x 104, 105 (4th Cir. 2001); Va. Code Ann. §§ 40.1-29.2, 40.1-29. To determine whether a worker is an employee as defined in the FLSA, and Va. Code § 40.1-29, the United States Court of Appeals for the Fourth Circuit has adopted the "economic realities test." *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006); *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016). This tests the relationship between the worker and their employer to determine if "the worker is economically dependent on the business to which he renders services or is, as a matter of economic [reality], in business for himself." *Schultz*, 466 F.3d at 304 (internal quotations omitted). The economic realities test consists of six factors:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Id.*

With this test, no single factor is dispositive, but the plaintiff must allege facts sufficient to demonstrate he is an employee based on a totality of the circumstances. *McFeeley*, 825 F.3d at 241. Consistent with the Rule 12(b)(6) standard, the Court will consider the allegations in the Amended Complaint in the light most favorable to Plaintiff and determine whether he has alleged sufficient facts to state a *plausible* claim that he is an employee of Defendant.

5

Defendant argues that it does not have the requisite control over the *manner* of Consignees' performance. (Def.'s Mem. Supp. at 13–14); *see Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F. Supp. 2d 569, 579. Rather, it argues, the examples of control Plaintiff provided in the Amended Complaint show that Plaintiff was only controlled by contract requirements, the scope of the contract, or oversight by Defendant. (Def.'s Mem. Supp. at 14.) This, Defendant states, is not enough to plausibly plead control as required under the economic realities test. (*Id.*)

Plaintiff, however, alleged a number of facts to demonstrate the level of control Defendant has over the Consignee relationship, including Defendant's ultimate control over:

> the amount of product to be delivered, to whom it is delivered, how much is charged for the product, how the product is to be stocked on customer shelves, what data is to be provided to the Defendant regarding product delivery and sales, whether the consignee gets to keep his territory, and whether the consignee is to face discipline.

(Pl.'s Mem. Opp'n at 8, ECF No. 25 (summarizing facts listed in the Amended Complaint).) Further, Plaintiff states he has been "repeatedly and consistently threatened by [Defendant] with reduction or seizure of territory." (Am. Compl. ¶ 23.e.i.)

Defendant next argues that Plaintiff has "significant opportunity for profit and loss." (Def.'s Mem. Supp. at 17.) Opportunities for profit and loss "typically exist where the worker receives additional compensation based, not on greater efficiency, but on the exercise of initiative, judgment, or foresight; has the flexibility to negotiate compensation . . . or has capital expenditure at risk in the job." *Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 17-cv-3556, 2019 WL 2866168, at *8 (S.D.N.Y. July 2, 2019). The

Consignment Agreement allows Consignees to hire employees and determine how much to pay them, their hours, and benefits. (Consign. Agree. ¶ 15, ECF No. 24-2.) Consignees are also allowed to determine the equipment they need in order to maximize profits. (*Id.* ¶ 5.) Further, Consignees can purchase additional distribution territories and build customer relationships by extending credit and acquiring new customers. (*Id.* ¶¶ 3–5.) Thus, Defendant argues that Plaintiff had significant opportunities for profit or loss and, "even if Pepperidge Farm controlled the relationship with chain retail stores in Plaintiff's territory, Plaintiff still 'could have grown [his] sales with smaller customers.'" (Def.'s Mem. Supp. at 19 (quoting *Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 77 (2nd Cir. 2020).)

On the other hand, Plaintiff states that a Consignee's "profit and loss was driven by factors largely outside of [C]onsignee control and wholly within Pepperidge Farm's." (Pl.'s Mem. Opp'n at 11.) For example, Pepperidge Farm predetermined where products were to be stocked on certain shelves in the retail stores and Consignees were not consulted on those plans. (Am. Compl. ¶ 23.g.i.) Additionally, Plaintiff states that Consignees were not allowed to contract with chain retail stores and "Pepperidge Farm retains sole authority to negotiate and contract with chain retailers and supermarkets." (*Id.* ¶ 23.g.ii.) This impedes Plaintiff's opportunity for profit and loss because "such retailers make up the overwhelming majority of Plaintiff's route" and "[t]he ability to service and sell to such retail stores is a matter of contract between Pepperidge Farm [and] its retail customers." (*Id.*) Consignees also have no control over the prices of the products sold to the chain retail customers or the allotment of products that Pepperidge

7

Farm gives to Consignees for sale. (*Id.* ¶¶ 23.d.i, 23.g.ii.) Thus, even if Plaintiff is out of a product that a customer needs and he requests it from Defendant, he may not receive it, which inhibits his opportunity for profit with that customer. (*Id.* ¶¶ 23.d.i.)

As to the third factor, the worker's investment in equipment or materials, Defendant argues that the Consignment Agreement is clear that Consignees must "obtain, maintain and insure his own delivery vehicle, computer, office space, and other equipment necessary to operate his distributorship, including its accounting, inventory, and billing functions." (Def.'s Mem. Supp. at 20.) Further, Consignees have to purchase the rights over their distributorship, which Defendant points out is a substantial investment. (*Id.*) Plaintiff counters that most Consignees can only purchase their routes using loans guaranteed by Defendant and Defendant can actually "deduct from money otherwise owed to a Consignee . . . if that Consignee owes money associated with the guarantee." (Am. Compl. ¶ 19.) Consequently, Plaintiff states, "facts have been alleged that demonstrate that it is the Defendant that has made the substantive investment." (Pl.'s Mem. Opp'n at 12.)

Further, in regard to the other equipment that Consignees have to purchase, Pepperidge Farm requires Consignees "to use handheld mobile devices that must be able to run Pepperidge Farm software in connection with servicing Pepperidge Farm customers." (Am. Compl. ¶ 26.) These devices are maintained for the benefit of Pepperidge Farm and Pepperidge Farm will actually fund the purchase of these items. (*Id.*) Consignees will then be forced to pay Pepperidge Farm back through deductions in weekly pay. (*Id.*)

Defendant's argument as to the fourth factor, degree of skill required for the work, relies solely on what the Consignment Agreement requires of Consignees. Specifically, "[t]he Consignment Agreements require Plaintiff to use his entrepreneurial skills and 'best efforts to realize the full sales potential of the Territory.'" (Def.'s Mem. Supp. at 20–21 (quoting Consign. Agree. at ¶ 4).) Defendant contends that Plaintiff, using his skill as a salesman and manager of other logistics, is solely responsible for the success of his distributorship. (*Id.* at 21.)

In contrast, Plaintiff alleges that "[t]he position of Consignee requires no special skill or training, aside from a normal driver's license." (Am. Compl. ¶ 23.i.) To support this statement, Plaintiff emphasizes that a Consignee's only duty is to deliver and stock the products in the specific territory, in specific locations on specific shelves, all predetermined by Defendant. (*Id.* ¶ 23.i.i.) Plaintiff also states that he often makes deliveries using a personal automobile that is under 10,000 pounds and typically does not require use of a trailer. (*Id.* ¶¶ 24, 25.) Thus, a Consignee is not required to have any special skills related to displaying the products, ordering the products, or obtaining specific driver's licenses.

Lastly, the Court must consider the permanence of Plaintiff's working relationship and how integral Plaintiff's services are to the business. Plaintiff has been a Consignee of Pepperidge Farm since 2015, which demonstrates the longevity of the relationship. (Am. Compl. ¶ 12.) Further, distribution of Pepperidge Farm products to retail stores is an essential aspect of Defendant's business. Defendant states that "even assuming Plaintiff has adequately pled . . . longevity of the relationship and importance of

9

Plaintiff's services to Pepperidge Farm's business[]," the economic reality test still leads to the conclusion that Plaintiff is an independent contractor. (Def.'s Mem. Supp. at 21.) Based on the totality of the circumstances, Defendant argues Plaintiff's FLSA, VOWA, and Virginia unpaid wage claims must be dismissed.

As stated above, the economic realities test looks to the totality of the circumstances. *McFeeley*, 825 F.3d at 241. Additionally, under the 12(b)(6) standard, a Plaintiff only needs to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. If the Court accepts all of the allegations in the Amended Complaint as true, and without making any judgments on the merits, Plaintiff has alleged sufficient facts to state at least a plausible claim that he is an employee and not an independent contractor. Plaintiff has alleged facts that Pepperidge Farm exercises significant control and oversight over him, that control causes him to have virtually no opportunity for profit and loss, that the job requires no special skill, that, while Consignees were responsible for some equipment, Defendant helped fund Consignees' purchases of territory and handheld devices, that the job is typically a long-term relationship, and that Consignees provide an important service to Defendant's operation. As such, Plaintiff's claims will not be dismissed for failure to plead an employment relationship.

Next, Defendant argues that Plaintiff has not plausibly alleged overtime claims. To state a plausible claim for unpaid overtime wages, "a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his employer failed to pay the requisite

10

overtime premium." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). This approach does not require a plaintiff to identify a specific week in which they were not paid for overtime work. *Id.* Rather, "a plaintiff may meet this initial standard 'by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, *or any other factors* that will permit the court to find plausibility." *Id.* (quoting *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014)) (emphasis in original); *Alley v. Quality Eco Techs., LLC*, No. 3:20cv355, 2021 WL 1196188, at *9 (E.D. Va. Mar. 29, 2021).

In the Amended Complaint, Plaintiff states that "Consignees regularly work more than 8 hours a day and 40 hours a week." (Am. Compl. ¶ 27.) He further estimates that "prior to the onset of the Covid-19 pandemic . . . he worked approximately 60 hours per week" and following the pandemic "Plaintiff estimates he has worked 45–50 hours a week." (*Id.*) Plaintiff then expounds on the way Consignees are paid, "commissions based on sales and/or deliveries made to the stores" not salary or any type of minimum payment system. (*Id.* ¶ 28.) He states that Consignees were not paid any overtime wages when they worked over 40 hours in a week and often "compensation was illegally charged back for inventory gaps, irregularities, pallet fees, [and] escalations." (*Id.* ¶ 29.) Plaintiff further states that Defendant assigned routes and duties that, based on their magnitude, clearly could not be completed within 40 hours per week. (*Id.* ¶¶ 49–50.)

Plaintiff estimated the length of his average work week, described the payment scheme, and alleged that he was not paid overtime when he worked over 40 hours in a

11

week. Taking all the allegations in the Amended Complaint as true, Plaintiff has alleged sufficient facts to "nudge [his] claim from conceivable to plausible" and "permit the court to find plausibility." *Hall*, 846 F.3d at 777; *see Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014) (explaining that a plaintiff alleging "that she worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours . . . during one or more of *those* forty-hour weeks, would suffice"). Thus, Plaintiff's overtime wage claims, will not be dismissed.

Finally, Defendant asks the Court to strike the class allegations in Counts III and IV. Defendant asserts that, by bringing the VOWA claims as class actions, Plaintiff is attempting to "expand the remedies the Virginia General Assembly established for violation of Virginia Code §§ 40.1-29 and 40.1-29.2." (Def.'s Mem. Supp. at 25.) While Rule 12(f) permits a court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), these motions "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Further, Defendant must show that the portion they wish to strike is prejudicial and the type of issue contemplated by Rule 12(f). *Hicks*, 2020 WL 9261758, at *3.

The Court does not believe that a Rule 12(f) Motion to Strike is the proper method for what Defendant is trying to achieve. Defendant argues that the claims under Virginia Code §§ 40.1-29 and 40.1-29.2 cannot be brought as class actions pursuant to Rule 23 because the code specifically says "the employee may bring an action, individually,

jointly . . . , or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the [FLSA]." Va Code Ann. § 40.1-29(J). Thus, Defendant argues, the Virginia General Assembly expressly chose to allow a representative private right of action *only* under the opt-in collective action procedure outlined in the FLSA.

Without ruling on this issue, the Court does not agree that a Rule 12(f) Motion to Strike is the proper method for handling this matter.[1] As stated above, the movant must show prejudice and that the matter is of the type envisioned by Rule 12(f). *Hicks*, 2020 WL 9261758, at *3. Not only has Defendant failed to show how the class allegations cause any prejudice to them, but they have also not demonstrated that the class allegation is "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Consequently, the 12(f) Motion to Strike will be denied.

## I. CONCLUSION

The Court finds that Plaintiff's Amended Complaint provides sufficient factual allegations that, if accepted as true, state a claim for relief against Defendant. The Court also finds that a Rule 12(f) Motion to Strike is inappropriate under the circumstances to strike the class allegations in Counts III and IV. Thus, Defendant's Motion will be denied.

---

[1] There, of course, may be other procedural ways to address this issue in the future. In no way does the Court's ruling on the 12(f) Motion to Strike preclude Defendant from raising their argument about the types of actions allowed under VOWA at a later point.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: August 16, 2022
Richmond, Virginia

14